[Civ. No. 28376.    Second Dist., Div. One.,    Dec. 21, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. FAIRFAX
FAMILY FUND, INC., Defendant and Appellant.*

*Reporter's Note: This opinion, originally certified for nonpublication,
was ordered published in the Official Reports by the Supreme Court.

Loeb & Loeb, and Herman F. Selvin for Defendant and Appellant.

Thomas C. Lynch and Stanley Mosk, Attorneys General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a preliminary injunction ordered by the Superior Court of Los Angeles County.

The action was brought by the Attorney General in the name of the People of the State of California to enjoin Fairfax Family Fund, Inc., a Kentucky corporation, from conducting a small loan business in California until a license is obtained in compliance with Financial Code section 24200.

On December 5, 1963, the plaintiff filed a complaint for injunction and charged, among other things, that the defendant had failed to comply with Financial Code section 24200.[1] It was necessary to have the summons published for the reason that personal service of the same could not be made in California. It is set forth in the proceedings that the defendant is a Kentucky corporation, that the designated agent in Kentucky for the service of process is Prentice Hall Corporation System, Frankfort, Kentucky; that the officers (president, vice president and secretary) and incorporators of the defendant are each residents of Chicago, Illinois. On December 17, 1963, the plaintiff filed a notice of motion for a preliminary injunction. Defendant filed an answer and affidavits in opposition to the motion for a preliminary injunction. On January 31, 1964, a preliminary injunction was granted which enjoined the defendant from engaging in the small loan business (of $300 or less) until a license is obtained in compliance with Financial Code section 24200.

The facts in part are as follows:

The defendant is a Kentucky corporation engaged in the business of making small loans by mail to residents of California and 31 other states. The defendant solicits its business by mailing printed material from Kentucky to persons in California. The borrower executes and returns by mail a loan application and promissory note. The defendant secures a California independent contractor to conduct a local credit

---

[1]Section 24200 provides: ''No person shall engage in the business of making or negotiating, for himself, or another, loans of money, credit, goods, or things in action, in the amount or of the value of three hundred dollars ($300) or less, without first obtaining a license from the commissioner.''

investigation. If the loan is approved, a check is mailed to the borrower and all payments are made by mail to the defendant's offices in Kentucky. The defendant maintains no offices in, nor do any of its corporate officers reside in, California. The defendant has over $22,000,000 in outstanding loans of which $3,500,000 are to California residents with an increase of approximately $90,000 per week to California residents. The defendant has never secured a small loan license as required by Financial Code section 24200. As a result of the defendant's failure to secure a license, the Commissioner of Corporations issued a desist and refrain order in accordance with Financial Code section 24607[2] which the defendant refused and failed to follow.

The defendant contended at the hearing, and in this court, that it is not subject to the provisions of the California Small Loan Law since it is engaged in interstate commerce, and any attempt to subject it to this control conflicts with the commerce clause of the Constitution of the United States and is void and unenforceable as to this defendant.

Accepting the defendant's contention that it is engaged in interstate commerce, the issue before this court is whether the commerce clause of the United States Constitution has, in effect, withdrawn from California the power to regulate matters of local concern (such as the present case) which affect interstate commerce?

It has been stated many times that the commerce clause, which has conferred upon Congress the power to regulate commerce, has not withdrawn from the state the power to regulate or control matters of local concern so long as Congress has not acted in the area, the regulation is nondiscriminatory and does not impose a burden on interstate commerce. (*California* v. *Thompson,* 313 U.S. 109 [61 S.Ct. 930, 85 L.Ed. 1219].) In the areas affecting the health, life and safety of their citizens, the courts have allowed reasonable and nondiscriminatory regulation. (*Huron Portland Cement Co.* v. *Detroit,* 362 U.S. 440 [80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294].)

The Small Loan Law of California is legislation de-

[2]Section 24607 provides: ''Whenever in the opinion of the commissioner any person is engaged in business as a lender or broker as defined in this division, without a license from the commissioner, or any licensee is violating any provision of this division, the commissioner may order said person or licensee to desist and to refrain from engaging in such business or further violating this division. If, after the order is made, a written request for a hearing is filed and no hearing is held within 30 days thereafter, the order is rescinded.''

signed for the public welfare. It is primarily to protect the citizens of this state from fraudulent and unconscionable conduct of those in the lending business (*In re Fuller*, 15 Cal.2d 425 [102 P.2d 321]), and, as such, is a matter of local concern.

Californians who deal or negotiate with, or obligate themselves to, appellant should have the same protection as afforded to Californians who deal with local small loan concerns.

There is no question of discrimination in this case in that the statutes in question apply to both interstate and intrastate lending agencies alike. There is no barrier erected by the statutes in question to stop an interstate concern from doing its business in California. The licensing is not designed to protect local companies from outside competition. The purpose of the legislation is to protect the members of the public in California from the lenders who would otherwise take advantage of them. The degree of regulation contained in the laws of this state with reference to loan sharks is not disproportionate to the evils which exist if the lenders are left to their own devices without licensing and without any regulation by the state. The charges or expenses imposed by the licensing procedure are no larger in amount than is reasonably necessary to defray the administrative expenses involved and could not in any event be classed as being discriminatory or imposing undue restrictions on interstate commerce. The investigation which is made upon the filing of an application for a license is, on its face, designed to ascertain facts which are necessary and proper under the circumstances.[3]

The small loan lender usually operates for that segment of the population between the poverty line and the commercial bank window. The people who patronize the small loan business are ordinarily of modest income, without resources to meet unaided the bills brought about by unemployment, sickness or other emergency, with little to pledge as security anything other than their prospects and character, and are likely to be helpless because of their ignorance.

---

[3]Financial Code section 24206 provides as follows: ''Upon the filing of the application and the payment of the fees and the approval of the bond, the commissioner shall investigate the facts and if he finds that the financial responsibility, experience, character, and general fitness of the applicant, and its members if the applicant is a copartnership or association, and its officers and directors if the applicant is a corporation, are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly, and efficiently within the purposes of this division, he shall issue and deliver a license to the applicant to engage in business in accordance with the provisions of this division at the location specified in the application.''

As heretofore indicated, the defendant contends here that since it is engaged in interstate commerce, and is not doing business locally, the commerce clause prohibits California from attempting to license its business. Defendant asserts that there are no contacts with California to subject it to regulation by California, since acceptance and payment of the loan take place in Kentucky.

Under the "minimum contact rule" of *International Shoe Co.* v. *Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], the California courts could, in all probability, obtain personal jurisdiction of this foreign corporation. There is no doubt that negotiation for the respective loans takes place within the state, and section 24200, Financial Code, requires a license even in the case of negotiation for a small loan. A local credit investigation is secured and the collection of delinquent accounts of necessity takes place in California. The defendant admits that there are currently $3,500,000 in outstanding loans to California residents, and this amount was, at the time of the hearing in the trial court, increasing at an average of $90,000 per week. To argue that defendant is not doing business in California, but engaged only in interstate commerce is to completely ignore the facts of life and reality. To deny California the power to license and regulate this business the same as it licenses and regulates local concerns doing the same business would, in effect, give an immunity to this defendant to which it is not entitled under the circumstances. The commerce clause does not ".... preclude a State from giving needful protection to its citizens in the course of their contacts with businesses conducted by outsiders when the legislation by which this is accomplished is general in its scope, is not aimed at interstate or foreign commerce, and involves merely burdens incident to effective administration." (*Union Brokerage Co.* v. *Jensen,* 322 U.S. 202, 212 [64 S.Ct. 967, 88 L.Ed. 1227, 152 A.L.R. 1072].) Certainly the legislation in question, as heretofore indicated, is designed to protect California residents, is general in scope and imposes no undue burden on interstate commerce. Fairfax should not be allowed to escape state regulation merely because it is also engaged in interstate commerce. As a practical matter, it would be next to impossible for the state to regulate the activities of this business without the license requirement.

In *Eli Lilly & Co.* v. *Sav-On-Drugs,* 366 U.S. 276 [81 S.Ct. 1316, 6 L.Ed.2d 288], Mr. Justice Black, speaking for the

court, upheld the state's right to license a foreign corporation which engaged in both interstate and intrastate commerce. The court refused to extend the immunity of *Robbins* v. *Taxing Dist. of Shelby County,* 120 U.S. 489 [7 S.Ct. 592, 30 L.Ed 694], since Lilly was engaged in local activities and not just interstate sales. In the case at bar, the defendant's activities are so localized by the very nature of its business as to cast aside the immunity of the *"Drummer"* cases.

*International Text Book Co.* v. *Pigg,* 217 U.S. 91 [30 S.Ct. 481, 54 L.Ed. 678, 7 L.R.A. N.S. 493], cited by appellant, is of little assistance to it for two reasons. First, that was a case involving the foreign corporation's right to sue in the state court, which is not the issue before this court. Secondly, the court in the *Text Book* case found the license requirement to be discriminatory and a direct burden on interstate commerce. No such burden or discrimination can be found in the case before us.

It should also be noted that when the burdens imposed by local legislation become too great, Congress may legislate to secure uniformity or to protect the national interest. This is a legislative and not a judicial function, and, so far as we can determine, no such legislation has ever been enacted. (*South Carolina State Highway Dept.* v. *Barnwell Bros.,* 303 U.S. 177 [58 S.Ct. 510, 82 L.Ed. 734].)

The order granting the preliminary injunction is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 19, 1965, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1965. Mosk, J., did not participate therein.