[No. C052167. Third Dist. Aug. 7, 2007.]

THE PEOPLE ex rel. EDMUND G. BROWN, JR., as Attorney General, etc., Plaintiff, Cross-defendant and Respondent, v. PURITEC, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Davis & Leonard and Stephen L. Davis for Defendant, Cross-complainant and Appellant.

Edmund G. Brown, Jr., Attorney General, Joseph O. Egan and Roy S. Liebman, Deputy Attorneys General, for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**DAVIS, Acting P. J.**—California has two statutes that prohibit the seller of a water treatment device from making performance or benefit claims that the device affects health or the safety of drinking water, unless the device has been certified by the State Department of Public Health: Health and Safety Code section 116835, subdivision (a), and Business and Professions Code section 17577.2, subdivision (c).[1]

In this appeal we conclude that these two statutes do not violate the federal Constitution's dormant commerce clause or First Amendment, as applied to health claims made by defendant PuriTec (PuriTec) on its Internet Web site concerning uncertified water treatment devices it offers for sale to California consumers. Accordingly, we affirm the judgment.

BACKGROUND

PuriTec is a Nevada company that sells water treatment devices internationally, including to California consumers. PuriTec's primary method of advertising is its Internet Web site (Web site).

Since 1991, the State of California (the State) has required that sellers of water treatment devices (to California consumers) that make "health claims"

---

[1] Effective July 1, 2007, the Department of Health Services was reorganized into the State Department of Health Care Services and the State Department of Public Health. In this opinion, we will simply refer to the former name, Department of Health Services.

regarding those devices have those devices certified by the Department of Health Services (DHS). Pursuant to regulation, DHS considers a "health claim" to be any claim that a water treatment device reduces or removes from the water an organic, inorganic or microbiological contaminant, as defined by (1) the State primary drinking water standards from the Health and Safety Code; or (2) the national primary drinking water standards from the federal Safe Drinking Water Act; or (3) Environmental Protection Agency standards. (See Health & Saf. Code, § 116830; Cal. Code Regs., tit. 22, § 60401.)

When DHS determines that a vendor or manufacturer is making health claims for an uncertified water treatment device, it sends a notice of violation that details prohibited conduct and requests correction within 30 days. Pursuant to a consumer complaint in August 2002, DHS examined PuriTec's Web site and determined that the company was making health claims as to several uncertified water treatment devices. DHS sent PuriTec a notice of violation in October 2002. Over the following year, PuriTec assured DHS that it would change its Web site to comply with California law, but it dragged its feet along the way.

In October 2003, the State filed a complaint against PuriTec and its owners (James and I.M. Mead, both of whom were subsequently dismissed). The complaint alleged that PuriTec had violated Health and Safety Code section 116835, subdivision (a), and Business and Professions Code section 17577.2, subdivision (c), by making performance- and benefit-related health claims for uncertified water treatment devices on its Web site, and that this activity also constituted unfair competition under Business and Professions Code section 17200. The complaint sought civil penalties and injunctive relief.

PuriTec answered and cross-complained, contending, among other things, that the application of Health and Safety Code section 116835, subdivision (a), and Business and Professions Code section 17577.2, subdivision (c), to its Web site violated the federal Constitution's dormant commerce clause and First Amendment.[2]

In a bench trial, the trial court granted judgment for the State. The court imposed civil penalties against PuriTec and ordered PuriTec to make changes to its Web site.

---

[2] Based on these two constitutional provisions, PuriTec also alleged in its responsive pleadings that the two statutes at issue are unconstitutional on their face. Our conclusion that the two challenged statutes are constitutional in these respects, as applied to PuriTec, also dispenses with these facial challenges.

DISCUSSION

1. *Standard of Review and Statutes at Issue*

This appeal asks whether Health and Safety Code section 116835, subdivision (a) (hereafter, Health and Safety Code section 116835(a)) and Business and Professions Code section 17577.2, subdivision (c) (hereafter, Business and Professions Code section 17577.2(c)), as applied to health claims made on PuriTec's Web site regarding uncertified water treatment devices, are constitutional under the federal Constitution's dormant commerce clause and First Amendment. This appeal is limited to these constitutional challenges. PuriTec has not challenged in its briefing the specific form of the injunction or any other specific relief that the trial court granted, and therefore has forfeited any claims in these regards. (See *Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, 808, fn. 1 [60 Cal.Rptr.2d 716].)

PuriTec concedes that the essential facts are undisputed. PuriTec also concedes that it sold water treatment devices in California, and that its Web site contained certain statements that the State contended violated California law. As such, this appeal presents questions of law that we determine independently. (*Reader's Digest Assn. v. Franchise Tax Bd.* (2001) 94 Cal.App.4th 1240, 1245 [115 Cal.Rptr.2d 53].)

Health and Safety Code section 116835(a) specifies as pertinent:

"(a) No water treatment device that makes product performance claims or product benefit claims that the device affects health or the safety of drinking water, shall be sold or otherwise distributed that has not been certified by [DHS or another applicable entity] . . . . Water treatment devices not offered for sale or distribution based on claims of improvement in the healthfulness of drinking water need not be certified pursuant to this section."

Business and Professions Code section 17577.2(c) specifies as relevant:

"It is unlawful for any person to do any of the following in connection with the sale, lease, rental, . . . or other disposition of water treatment devices: [¶] . . . [¶]

"(c) . . . make product performance claims or product benefit claims that the device affects health or the safety of drinking water, unless the device has been certified by the [DHS] pursuant to Article 3 (commencing with Section 116825) . . . of the Health and Safety Code."

2. *Dormant Commerce Clause*

■ The federal Constitution's commerce clause grants Congress the authority "[t]o regulate commerce . . . among the several states." (U.S. Const.,

art. I, § 8, cl. 3.) This grant of authority to Congress also encompasses an implicit or "dormant" limitation on the authority of states to enact legislation affecting interstate commerce. (*Healy v. The Beer Institute* (1989) 491 U.S. 324, 326, fn. 1 [105 L.Ed.2d 275, 109 S.Ct. 2491] (*Healy*); *Ferguson v. Friendfinders, Inc.* (2002) 94 Cal.App.4th 1255, 1261 [115 Cal.Rptr.2d 258] (*Ferguson*); *Bronco Wine Co. v. Jolly* (2005) 129 Cal.App.4th 988, 1016 [29 Cal.Rptr.3d 462] (*Bronco*).)

A two-tiered approach is generally used to determine whether state legislation has violated the dormant commerce clause. (*Brown-Forman Distillers v. N. Y. Liquor Auth.* (1986) 476 U.S. 573, 578–579 [90 L.Ed.2d 552, 106 S.Ct. 2080] (*Brown-Forman*); *Bronco, supra,* 129 Cal.App.4th at p. 1016; *Ferguson, supra,* 94 Cal.App.4th at p. 1261.)

Under the first tier, which employs a strict scrutiny review, a state statute is invalid if it discriminates against interstate commerce in favor of in-state economic interests, or if its practical effect is to directly control commerce wholly outside the regulating state. (*Bronco, supra,* 129 Cal.App.4th at pp. 1016–1017; *Ferguson, supra,* 94 Cal.App.4th at pp. 1261–1263; *Brown-Forman, supra,* 476 U.S. at p. 579; *Healy, supra,* 491 U.S. at p. 336.)

Under the second tier, which is used to evaluate state legislation that does not discriminate against interstate commerce or directly control it, a balancing test is employed: "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." (*Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 90 S.Ct. 844] (*Pike*); see *Brown-Forman, supra,* 476 U.S. at p. 579; *Ferguson, supra,* 94 Cal.App.4th at p. 1262.)

### a. *First-tier approach—strict scrutiny*

In applying the first-tier approach here, PuriTec does not argue, nor could it, that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) discriminate against interstate commerce in favor of California commerce. The two statutes apply equally to in-state and out-of-state actors. (See *Ferguson, supra,* 94 Cal.App.4th at p. 1262.)

Instead, under the first-tier approach, PuriTec contends that the practical effect of these two statutes is to directly control out-of-state Web site content because they force the seller of water treatment devices to make all of its Web site advertising conform to California law. In other words, these two statutes force such sellers to remove all health claims for uncertified devices from their Web sites because California consumers may see those claims.

■ We do not see the practical effect of Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) as directly controlling commerce wholly outside California. (*Healy, supra,* 491 U.S. at p. 336; *Bronco, supra,* 129 Cal.App.4th at pp. 1016–1017; *Ferguson, supra,* 94 Cal.App.4th at pp. 1261–1262.) These two statutes directly regulate Web site advertising that is targeted at California consumers. If sellers of water treatment devices decide to conform all of their Web site advertising to California law, that is a voluntary business decision, not a mandatory legal one. As the trial court factually found, in findings not challenged by PuriTec on appeal, "technology exists to separate [a] California website from the ROW [rest-of-the-world] website established by a company such as PuriTec . . . . PuriTec could and can easily structure its websites to inform California customers at the point of sale (the 'check out' page of the website) that its devices are not certified by the State of California, and that no health or safety claims relative to drinking water can be made under California law about PuriTec's devices. All this can be accomplished without interfering with PuriTec's sales of its devices to non-California customers." Any interference with out-of-state sales can also be eliminated, the State suggests, by a simple footnote on the PuriTec Web site that the device has not been submitted for certification in California, as required by California law, to make health or safety claims to California consumers.

PuriTec likens its position to that of the business entity in *Healy.* In *Healy,* the United States Supreme Court invalidated under the dormant commerce clause a Connecticut statute that prohibited a business entity from charging more in Connecticut than it did in three bordering states. The court concluded that the statute directly controlled commerce occurring wholly outside Connecticut because of the inevitable effect the statute would have on the prices charged by the entity in its sales in the other states. Said *Healy:* "[A] State may not adopt legislation that has the practical effect of establishing 'a scale of prices for use in other states . . . .' " (*Healy, supra,* 491 U.S. at p. 336.)

*Healy* is inapposite. As we have explained, Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) do not have the practical effect of establishing their health claim requirements as the law in other states for Web site advertising of water treatment devices. As the trial court found, a separate California Web site or a separate part of the general PuriTec Web site can be established that informs California customers that PuriTec's devices have not been certified by California and therefore no health or safety claims regarding drinking water can be made under California law about those devices.

PuriTec also seeks support in a group of federal decisions that has struck down on dormant commerce clause grounds state laws that purported to

criminalize the dissemination of sexually explicit material harmful to minors over the Internet. (See *PsiNet, Inc. v. Chapman* (4th Cir. 2004) 362 F.3d 227 (*PsiNet*); *American Booksellers Foundation v. Dean* (2d Cir. 2003) 342 F.3d 96; *American Civil Liberties Union v. Johnson* (10th Cir. 1999) 194 F.3d 1149; *Cyberspace Communications, Inc. v. Engler* (E.D.Mich. 2001) 142 F.Supp.2d 827; *American Libraries Ass'n v. Pataki* (S.D.N.Y. 1997) 969 F.Supp. 160 (*Pataki*).)

These federal cases, too, are inapposite. Four distinctions appear.

First, the statutes at issue in the federal cases sought to regulate the Internet itself. (See *Ferguson, supra,* 94 Cal.App.4th at pp. 1264–1265.) The two statutes before us do not have such grand designs. They do not seek to regulate the Internet itself, but only misleading advertising on the Internet regarding specifically identified commercial products.

Second, the one-track mind of the statutes in these federal cases—criminalizing the Internet dissemination of sexually explicit material harmful to minors—prompts one to question their general applicability in the dormant commerce clause arena.

Third, relying on these federal cases, PuriTec argues that a state cannot regulate Internet activity that is not located in or targeted at the state. As we have seen, PuriTec has targeted its Web site advertising at California consumers.

And lastly, these federal cases recognize that because there is no effective way to limit access to online materials geographically, a Web site owner operating legally in California, for example, would have to comply with the non-California statute at issue to avoid liability. (See *PsiNet, supra,* 362 F.3d at pp. 239–240, discussing *Pataki, supra,* 969 F.Supp. at p. 174.) Consequently, the non-California statute would directly control commerce occurring wholly outside the statute's respective state jurisdiction. As we explained above, however, Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) do not directly control commerce occurring wholly outside California. Furthermore, while the display of sexual material over the Internet cannot be geographically isolated, the display of health and safety claims of water treatment devices over the Internet can be. As we have seen, PuriTec Web site(s) can inform California consumers that PuriTec's devices have not been certified by California and therefore no health or safety claims about those devices concerning drinking water can be made under California law.

This last point about Internet geographical ubiquity, however, raises three related points regarding the practical effect of the certification requirements of Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c).

The first point is PuriTec's argument that, given the Internet's ubiquitous geographical nature, California consumers cannot be shielded from uncertified health claims made on other portions of PuriTec's Web site or on another PuriTec Web site. Consequently, PuriTec again notes, the practical effect of Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) will force sellers of water treatment devices who advertise on the Internet to make all of their Web site advertising conform to California law; thus, these two statutes directly control commerce wholly outside California. We disagree.

As the trial court correctly recognized, "The State of California may not regulate the content of [PuriTec's] rest-of-the-world website even if it is possible or even likely that a California resident can access [that] website." That California consumers cannot be shielded from health claims made on PuriTec's rest-of-the-world Web site, however, is not PuriTec's concern, so long as PuriTec informs California consumers on that Web site (or directs California consumers to the California Web site) that PuriTec's devices have not been certified by California and therefore no health or safety claims about those devices concerning drinking water can be made under California law. To borrow loosely from an old saying, you can lead a California customer to consumer warnings about water treatment devices, but you can't make him heed them. That is all that is required of PuriTec as a practical matter.

The second point flows from the first. PuriTec argues that conforming to California law will be next to impossible if other states adopt Web site advertising schemes different from those of California. As we have just explained, PuriTec does not have to conform all of its Web site advertising to California law; it need only inform California customers that its devices have not been certified by California and therefore no health or safety claims regarding drinking water can be made under California law about those devices. The same approach can be used regarding the respective relevant laws from other states.

■ PuriTec then argues, as the third point, that it cannot be "expected to create completely different Web sites targeted at every state." Again, there is no need to create completely different Web sites targeted at every state. There is only a need to inform customers from particular states about the relevant law of those states. These kinds of state-focused consumer warnings are seen routinely in national print advertisements. An Internet Web site can surely be

as accommodating. As our state high court has explained, "the federal system contemplates that individual states may adopt distinct policies to protect their own residents and generally may apply those policies to businesses that choose to conduct business within that state. [Citations.] It follows from this basic characteristic of our federal system that, at least as a general matter, a company that conducts business in numerous states ordinarily is required to make itself aware of and comply with the law of a state in which it chooses to do business." (*Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 105 [5 Cal.Rptr.3d 730, 137 P.3d 914].)

■ We conclude that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c), as applied to PuriTec's Internet Web site advertising, are not unconstitutional under the first-tier approach to dormant commerce clause analysis because they do not have the practical effect of directly controlling commerce wholly outside California.

 b. *Second-tier approach—balancing test*

 PuriTec contends that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) are also invalid under the second-tier approach to dormant commerce clause analysis because their burden on interstate commerce significantly outweighs any legitimate local benefit.

 As noted, the second-tier approach can be stated as follows: "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." (*Pike, supra,* 397 U.S. at p. 142; accord, *Ferguson, supra,* 94 Cal.App.4th at p. 1262.)

 PuriTec claims that the burden imposed on interstate commerce by Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) is clearly excessive in relation to the putative local benefits. We disagree.

■ The health and safety of drinking water certainly constitutes a legitimate state interest. "In the areas affecting the health, life and safety of their citizens, the courts have allowed reasonable and nondiscriminatory regulation." (*People v. Fairfax Family Fund, Inc.* (1964) 235 Cal.App.2d 881, 883 [7 Cal.Rptr. 812] (*Fairfax Family Fund*), citing *Huron Cement Co. v. Detroit* (1960) 362 U.S. 440 [4 L.Ed.2d 852, S.Ct. 813].) And the burden imposed on interstate commerce by Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) is not clearly excessive in relation to the local benefits to be derived. As the trial court aptly

observed, "Because the technology exists to separate the California website from the [rest-of-the-world] website established by a company such as PuriTec, it is not a burden on interstate commerce for DHS to regulate what can be said about water purification products to California residents. PuriTec could and can easily structure its websites to inform California customers at the point of sale (the 'check out' page of the website) that its devices are not certified by the State of California, and that no health or safety claims relative to drinking water can be made under California law about PuriTec's devices."

(See *People v. Hsu* (2000) 82 Cal.App.4th 976, 983 [9 Cal.Rptr.2d 184] [the fact that Internet communication can affect interstate commerce does not automatically cause a state statute, in which Internet use is an element, to burden interstate commerce; if a legitimate local concern is found, the extent of regulatory burden that will be tolerated depends on the nature of the local interest involved].)

PuriTec also argues that the putative local benefits are minimal because California consumers cannot be shielded from uncertified health claims made on other portions of PuriTec's Web site(s). As we discussed in the previous part of this opinion, while it is true California consumers cannot be shielded from uncertified health claims over the Internet, Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) provide such consumers with fair warning about those claims. It is up to the individual California consumer to heed that warning. In this way, putative local benefits can be realized.

We conclude that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c), as applied to PuriTec's Web site advertising, are not unconstitutional under the second-tier approach to dormant commerce clause analysis because the burden these statutes impose on interstate commerce is not clearly excessive in relation to their putative local benefits.

### 3. *First Amendment—Commercial Speech*

PuriTec lastly contends that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c), as applied to Web site advertising, infringe upon commercial free speech protected by the federal Constitution's First Amendment. We disagree.

"The First Amendment's concern for commercial speech is based on the informational function of advertising." (*Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557, 563 [65 L.Ed.2d 341, 100 S.Ct. 2343] (*Central Hudson*).) The First Amendment " 'accords less protection to commercial speech than to other constitutionally safeguarded forms of expression,' " such as political speech. (*Nagel v. Twin Laboratories, Inc.* (2003)

109 Cal.App.4th 39, 46 [134 Cal.Rptr.2d 420] (*Nagel*), quoting *Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60, 64–65 [77 L.Ed.2d 469, 103 S.Ct. 2875].) There are three reasons for the reduced protection. First, commercial speech is easier to verify, and second, commercial speakers act from profit motives; therefore, governmental regulation of such speech is less likely to chill its dissemination. (*Nagel, supra,* 109 Cal.App.4th at pp. 46–47; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 954–955, 969 [119 Cal.Rptr.2d 296, 45 P.3d 243] (*Kasky*).) And third, because the government has the authority to regulate commercial transactions to prevent harm to the consumer, it similarly has the authority to regulate the speech connected to those transactions. (*Nagel, supra,* 109 Cal.App.4th at p. 47; *Kasky, supra,* 27 Cal.4th at p. 955.)

█ A four-part analysis has developed to determine whether state regulations on commercial speech are valid under the First Amendment. First, to be protected at all, the commercial speech must concern lawful activity and not be misleading. Second, the asserted governmental interest must be substantial. If these two factors are present, the regulation must directly advance the governmental interest, and finally, the regulation must not be more extensive than is necessary to serve that interest—i.e., there must be a " 'reasonable fit' " between the government's purpose and the means chosen to achieve it. (*Kasky, supra,* 27 Cal.4th at p. 952; see *Central Hudson, supra,* 447 U.S. at p. 566; *Board of Trustees, State Univ. of N. Y. v. Fox* (1989) 492 U.S. 469, 480 [106 L.Ed.2d 388, 109 S.Ct. 3028].)

Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c), as applied to PuriTec's Internet Web site advertising, pass this four-part test.

First, selling water treatment devices concerns lawful activity and we will assume, for the sake of argument, that PuriTec's health claims regarding its devices are not misleading; consequently, the First Amendment applies.

Second, there can be no quibble that California's interest here is substantial. As noted, state regulation of health and safety claims concerning drinking water directly implicates a state's police power to protect the health and safety of its citizens. (See *Fairfax Family Fund, supra,* 235 Cal.App.2d at p. 883.)

█ Third, the two statutes directly advance this interest by ensuring that health claims for water treatment devices are truthful.

PuriTec counters that the two challenged statutes do not target false or deceptive statements because the statutes apply equally to true and untrue statements in the uncertified device context. The two statutes, though, merely

seek to ensure that health or safety claims for water treatment devices have been certified as accurate. Simply because true statements will be part of the certification process does not render that process a blind shot. The certification process is a *test* of truth, and thereby targets false or deceptive statements; the true statements will be certified and the untrue ones will not be.

PuriTec also claims that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) do not directly advance the accuracy of health claim allegations because California consumers can easily access the non-California part of PuriTec's Web site(s) or can link from that Web site to other information regarding particular water treatment devices. As we have noted previously, the trial court found, and it has not been disputed, that technology exists for PuriTec to separate its California Web site from its rest-of-the-world Web site, and that PuriTec can easily structure its Web sites to inform California customers at the point of sale (the "check out" page) that its devices are not certified by the State of California and therefore no health or safety claims relative to drinking water can be made under California law about those devices.

And fourth, for the reasons already set forth and for the one that follows, there is a " 'reasonable fit' " between California's purpose of ensuring the accuracy of health claim allegations regarding water treatment devices and the means chosen to achieve that purpose—the certification process. (*Kasky, supra,* 27 Cal.4th at p. 952.) Because commercial speech is such "a sturdy brand of expression," traditional notions of prior restraint may not apply, and the kind of commercial speech at issue here can be constitutionally subjected to a "pre-screening arrangement" to ensure its accuracy. (*Central Hudson, supra,* 447 U.S. at p. 571, fn. 13; *Shapero v. Kentucky Bar Assn.* (1988) 486 U.S. 466, 476 [100 L.Ed.2d 475, 108 S.Ct. 1916] [upholding a requirement that a lawyer have his solicitation letter approved by a state agency regarding the truthfulness of stated facts before mailing it out to potential clients].)

Within the commercial speech realm, PuriTec also claims that Health and Safety Code section 116835(a) and Business and Professions Code section 17577.2(c) are unconstitutionally overbroad and unconstitutionally vague. We can dispense with these claims quickly.

 The First Amendment's overbreadth doctrine does not apply to professional commercial advertising because it is unlikely that such speech is susceptible to being chilled by overbroad regulation. (*Bates v. State Bar of Arizona* (1977) 433 U.S. 350, 380–381 [53 L.Ed.2d 810, 97 S.Ct. 2691]; *Leoni v. State Bar* (1985) 39 Cal.3d 609, 622, fn. 11 [217 Cal.Rptr. 423, 704 P.2d 183].)

As for any unconstitutional vagueness, James Mead, PuriTec's owner, effectively conceded at trial that it was clear how PuriTec was to comply with the California certification law.

DISPOSITION

The judgment is affirmed.

Raye, J., and Hull, J., concurred.

On August 15, 2007, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 28, 2007, S156422.