Filed 7/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048132 |
| v. | (Super. Ct. No. 11WF0999) |
| MARK IRVING SHAPIRO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald E. Klar, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21). Affirmed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant was convicted of violating Penal Code section 288.3, subdivision (a),[1] which prohibits contacting a minor for the purpose of committing various crimes, including, as alleged here, sexual penetration with a person under the age of 18 years (§ 289, subd. (h)). The court ordered defendant placed on formal probation for five years subject to various conditions, including that defendant serve 240 days in the Orange County jail.

Defendant's interactions with the victim, whom we refer to as Jane Doe, were entirely over the Internet, primarily through chat rooms. At the time he met Jane Doe, she was 14 years old and he was 59 years old, but he represented himself to be only two or three years older than her. The two developed a close relationship, and when Jane Doe was 16 years old, they began having cybersex, which involved watching pornographic videos together, describing various sexual acts they would do to one another, and masturbating together. Defendant was in California during these online interactions, and Jane Doe was in Indiana.

Defendant raises numerous contentions on appeal. He contends Jane Doe is not a minor because the age of consent in Indiana is 16 years old, and that, in any event, he could not have caused the sexual penetration from thousands of miles away. He also contends his conviction under section 288.3 violates his constitutional rights to equal protection, privacy, and free speech, and that it violates the dormant commerce clause.

We affirm. Defendant's seduction of Jane Doe under false pretenses, together with his repeated suggestions that she masturbate, satisfied the statutory elements of intending to participate in causing sexual penetration. Even if Jane Doe was an adult for purposes of applying Indiana law, she was a minor for purposes of applying California law. And we reject the various constitutional challenges defendant raises to the validity of section 288.3 and his conviction in particular.

_____

[1] All statutory references are to the Penal Code unless otherwise specified.

FACTS

Jane Doe met defendant in an Internet chat room a few weeks before her 15th birthday, shortly after starting high school.  The school was a boarding school in Indiana and she was "horribly home sick."  She had two solaces; one was her participation in volleyball at school, the other was that she, in her words, "met somebody that I felt I could really talk to and relate a little bit and they seemed to care, . . . ."  Defendant identified himself as Todd Christopher Elliott and claimed he was only two or three years older than her.  He claimed to be living in Huntington Beach with an uncle.  Early in the relationship he sent photographs of a young man that he claimed were of him.  In reality, his name is Mark Irving Shapiro and he was approximately 59 years old at the time.  Jane Doe told defendant her real age.

Initially, they would chat a few times per week, talking about all aspects of their life.  He claimed to run track and expressed an interest in the Wizard of Oz.  Their conversations were not initially sexual.  They would send each other little gifts in the mail, including, in one instance, him sending her flowers, and in another instance her sending him a drawing of him.  They would send photos to one another and acknowledge each other's birthday.  The frequency of their chats increased over time to the point where, by the age of 15, they were chatting every day, on average three hours per day.  At the age of 15, she felt she was in love with him.  As she explained, "I was convinced that I was in love with him and I really trusted him because he was somebody I could really talk to and before I never really had somebody I could talk to about anything or all my problems."  By the time she was 16 years old, the two were saying "I love you" to each other and using pet names.

When Jane Doe was 16 years old, the relationship turned sexual.  Defendant began by encouraging her to talk about sexual things because, as she recounted his explanation, "everybody needs somebody to talk to about those kind of

3

things" and "it was to help me out." He began sending her links to pornographic videos. "He tried to make it clear that the intention was not to be sexual but obviously it felt pretty sexual." He explained to her that "it's okay to masturbate" and "everybody should do that because it's good for you." These sorts of conversations became commonplace, occurring several times per week. Around this time he sent her a picture of a young man, who he claimed to be him, with his penis exposed.

These conversations evolved from him suggesting masturbation to the two of them describing various erotic scenarios involving sexual intercourse between the two of them. They both acknowledged masturbating while having these chats. He also began offering more detailed recommendations about how to achieve an orgasm, such as by penetrating herself with the handle of a hairbrush. He would make these sorts of recommendations frequently. This transition from simply recommending masturbation to discussing erotic scenarios and recommending penetration with a hair brush occurred within a few weeks.

By the time of July 2008, Jane Doe's relationship with family and friends had deteriorated as a result of her increasing obsession with her relationship with "Todd Elliott." She was not spending much time with family and friends because they disapproved of the relationship, and defendant would get mad if she did not check in on a regular basis. She decided she would rather upset her friends and family than him.

Around that time Jane Doe's mother grew concerned. On a family vacation Jane Doe spent the entire time on a cell phone chatting with "Todd Elliott." Jane Doe then sued her father to obtain information about her trust fund, and in general her mother noticed a radical change in Jane Doe's personality. These occurrences prompted her mother and father to hire a private investigator to look into Todd Elliott's background. The investigator installed onto Jane Doe's computer a keystroke logger and a program to retrieve deleted files.

As a result of the investigation, they discovered "Todd Elliot" was in fact the defendant Mark Shapiro, an older man. They then hired a counselor for Jane Doe to discuss the findings. They also took her computer away. Afterwards, defendant warned Jane Doe that her parents' claims were all lies, and at some point e-mailed her saying, "48 days until you are 18, and you will be free to make your own decisions." Two or three weeks later, defendant admitted the truth.

After learning the truth about defendant, Jane Doe, in her words, "did go and talk to him like an idiot and I was actually fine with it. I talked to him because I had always assured him it didn't matter what age he was, that I loved him, and age didn't make a difference, . . ." She continued talking with him for a few months, until she was approximately 19 years old.

In January 2010 a Huntington Beach Police detective searched defendant's house and found a computer containing files with images of a nude female bearing Jane Doe's name. There was another file folder labeled "Todd" with pictures in it.

Prior to trial, defendant filed a nonstatutory motion to dismiss, raising many of the same arguments raised in this appeal, which the court denied. The prosecutor moved in limine to exclude any mention of the fact that the age of consent in Indiana is 16 years old, which the court granted. The court also excluded a jury instruction that would have informed the jury that the age of consent in Indiana is 16 years old. Defendant timely appealed the judgment.

DISCUSSION

*Legal Principles*

Section 288.3, subdivision (a) states, "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an

5

offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense." Here, the target offense was section 289, subdivision (h), which states, "Except as provided in Section 288, any person who participates in an act of sexual penetration with another person who is under 18 years of age shall be punished by imprisonment in the state prison or in a county jail for a period of not more than one year." "Sexual penetration," as used in the statute, means, "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) A "foreign object" has been held to include one's own finger. (*People v. Keeney* (1994) 24 Cal.App.4th 886, 889.) Putting these legal principles together, the prosecution's theory at trial was that defendant violated section 288.3, subdivision (a), by communicating with Jane Doe with the intent to seduce her and convince her to masturbate.

*Defendant Intended to Participate in an Act of Sexual Penetration*

Defendant first contends he cannot be found guilty of attempting to violate section 289, subdivision (h), because he did not intend to "participate in an act of sexual penetration." Nor, he claims, did he intend to engage in the act of "caus[ing]" Jane Doe to penetrate herself, as that term is used in section 289, subdivision (k). He argues, "[Defendant] was thousands of miles away. He could not possibly have caused the penetration . . . ." "The act of self-penetration was entirely consensual. It was completely voluntary. Jane Doe was alone at the time and not subject to any coercion of any kind. She decided to do it and then did it. Thus, Jane Doe 'caused' the sexual penetration, not [defendant]."

6

Defendant takes too narrow a view of the law. Taken together, the statutes require the People to prove that defendant intended to participate in the act of causing the sexual penetration. They do not require that defendant intended to have physically caused the penetration. Indeed, "sexual penetration" includes causing *another* person to accomplish the penetration. (§ 289, subd. (k).) Thus it is clear that defendant need not accomplish the penetration personally.

The question is, what conduct short of physically causing the penetration constitutes participation in the act of causing the penetration? Defendant contends, "The statute makes no provision for criminally punishing a person who merely invites or encourages another person to sexually penetrate himself or herself and this Court should not read such a provision into the statute."

We need not decide whether mere encouragement to masturbate would satisfy section 289, subdivision (h), because defendant's conduct here was far more pervasive and, we conclude, did come within the scope of the statute. Defendant ingratiated himself with Jane Doe by false pretenses, pretending to be a young man only a few years older than her. He seduced her and nurtured such a strong relationship that Jane Doe thought she was in love with this nonexistent person. Defendant then used the influence of the trust he had engendered to inundate her with sexual content, such as repeated suggestions that she masturbate, explicit sexual communications, pornographic videos, and fictional short stories of extremely graphic, erotic encounters between the two. He moved quickly from simply encouraging her to masturbate, to engaging in cybersex for his own sexual gratification. He was not a sex-ed teacher simply offering an opinion on the benefits of masturbation. His conduct satisfies the requirement of intending to participate in the act causing the sexual penetration.

*Defendant's Conviction Did Not Violate the Equal Protection Clause*

Next, defendant contends his conviction violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, and article 1, section 7 of the California Constitution. Defendant explains his argument by way of two hypothetical examples. Person A and person B are both located in California, and each communicates with a 16 year old female in Indiana. "Person A suggests to the female in Indiana that she masturbate by self-penetration. Person B tells the female he will come to Indiana and have sexual intercourse with her." "[U]nquestionably Person B has committed no crime." The reason person B has committed no crime is that section 288.3 prohibits communications with minors for the purpose of participating in several target crimes, but section 261.5 — sex with a minor (i.e. statutory rape) — is not listed among the target crimes. By contrast, "Person A can be prosecuted in California for a criminal offense under [section 288.3, subdivision (a),] with [section 289, subdivision (h),] as the target offense . . . ." "Engaging in sexual intercourse is unquestionably more serious sexual conduct than encouraging another person to masturbate." Therefore, it violates Person A's right to equal protection to convict him. And since defendant is in Person A's position, his conviction should be overturned.

While we commend defense counsel for his clever argument, as we will explain, it is not sound.

"'"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."' [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) In *People v. Hofsheier* (2006) 37 Cal.4th

1185 (*Hofsheier*), the court analyzed whether persons convicted of section 288a, subdivision (b)(1) (oral copulation with a minor) and section 261.5 (statutory rape) were similarly situated and concluded they were: "The only difference between the two offenses is the nature of the sexual act. Thus, persons convicted of oral copulation with minors and persons convicted of sexual intercourse with minors 'are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.'" (*Hofsheier*, at p. 1200.) Similarly here, the individuals described in defendant's hypothetical are sufficiently similarly situated to warrant scrutiny under the equal protection clause.

"In resolving equal protection issues, the United States Supreme Court has used three levels of analysis. Distinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest. Classifications based on gender are subject to an intermediate level of review. But most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose." (*Hofscheier*, *supra*, 37 Cal.4th at p. 1200.) Classifying sex offenders according to the nature of their act does not involve suspect classifications, and thus the rational basis test applies.

Is there any rational basis for criminalizing communications intent on sexual penetration but not communications intent on sexual intercourse? We believe there is, based on the definition of "sexual penetration." It includes both anal and vaginal penetration, and also penetration by "any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) Foreign objects may be of varying degrees of size, shape, or texture, and thus present potential dangers to a minor's genitals or anal opening greater than simple consensual intercourse. Thus the Legislature could

9

rationally conclude that vaginal or anal penetration with a foreign object is more harmful than intercourse between a 16 or 17 year old minor and an adult.[2]

Nor is there any constitutional violation as applied to this case. Defendant framed his hypothetical in terms of a man who simply encouraged a 16 year old to masturbate, but here defendant encouraged Jane Doe to penetrate herself with the handle of a hair brush, precisely the sort of foreign object a legislature could conclude is potentially more harmful than intercourse. Accordingly, defendant's conviction did not violate his right to equal protection under the law.

*The Legislative Intent in Passing Section 288.3 Does Not Require Reversal*

Next defendant contends the conviction must be set aside because the legislative intent of voters in passing Proposition 83 (The Sexual Predator Punishment and Control Act: Jessica's Law), which included section 288.3, was to protect California minors, and *only* California minors. In support, defendant cites various ballot arguments and background materials that express a concern for protecting California's children.

Defendant's argument is ultimately based on statutory interpretation. When interpreting a statute, we look to legislative history only when the words of the statute are ambiguous. (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 442; *People v. Dunbar* (2012) 209 Cal.App.4th 114, 117 [courts will not "countenance efforts to *create* an ambiguity by reference to extrinsic evidence; outside sources simply do not come into play when the language of a statute is clear and unambiguous"].) Defendant recognizes

_____

[2] We note that if the victim were 15 years old or younger, depending on the age of the defendant, intercourse could still qualify as a lewd act under section 288, which is a target crime under section 288.3. (*People v. Gonzalez* (2012) 211 Cal.App.4th 132, 137; *People v. Manchel* (2008) 163 Cal.App.4th 1108, 1113, disapproved on other grounds by *People v. Picklesimer* (2010) 48 Cal.4th 330, 338-339, fn. 4; but see *People v. Rancht* (2009) 173 Cal.App.4th 1369, 1373-1374 [disagreeing with *Manchel*].) Arguably, there would be no potential equal protection violation in that case.

this principle, but makes no effort to explain why the words of the statute are ambiguous. And we do not find them to be so.

Section 288.3 makes it a crime to communicate, or *attempt* to communicate, with a minor for the purpose of committing various sex crimes. The statute is silent as to any requirement related to the minor's location. Indeed, by making *attempts* criminal, the statute does not even require that there *be* a minor. The defendant may in fact be communicating with an adult posing as a minor. The focus of the statute simply is not on the minor, but instead on the defendant's communication with the requisite intent. If those elements are met, it does not matter where the minor is located or even if any minor is involved at all. Because the statute is clear, we need not consider legislative history.

*Section 288.3 Does Not Violate the Commerce Clause*

Next defendant contends section 288.3 runs afoul of the commerce clause of the United States Constitution, which grants Congress the power to "regulate commerce . . . among the several states . . . ." (U.S. Const., art. I, § 8, cl. 3.) "This grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of states to enact legislation affecting interstate commerce." (*People ex rel. Brown v. PuriTec* (2007) 153 Cal.App.4th 1524, 1531.) "When a state imposes a regulation that unduly burdens interstate commerce and impedes free trade, it may violate the commerce clause." (*People v. Garelick* (2008) 161 Cal.App.4th 1107, 1120.)

The applicable test for determining whether a regulation violates the dormant commerce clause is as follows: "Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such

11

commerce is clearly excessive in relation to the putative local benefits.  [Citation.]  If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." (*Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142.)  "Statutes affecting public safety carry a strong presumption of validity [citation], and the definition and enforcement of criminal laws lie primarily with states." (*People v. Hsu* (2000) 82 Cal.App.4th 976, 983-984.)

Applying these principles, we conclude section 288.3 does not violate the commerce clause.  California has an extremely strong interest in punishing those who attempt to sexually exploit minors.  And the burden on interstate commerce is nil.  Section 288.3 is tailored to communications with minors with the intent to commit certain sex crimes.  There can be no legitimate commerce associated with such communications.

In contending otherwise, defendant principally relies on *American Libraries Ass'n. v. Pataki* (S.D.N.Y. 1997) 969 F.Supp. 160 (*Pataki*).  *Pataki* held a New York statute violated the commerce clause that made it illegal to knowingly send certain types of sexual images to a minor over the Internet.  The *Pataki* court invalidated the statute for three reasons:  "First, the Act represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York.  Second, the Act is invalid because although protecting children from indecent material is a legitimate and indisputably worthy subject of state legislation, the burdens on interstate commerce resulting from the Act clearly exceed any local benefit derived from it.  Finally, the Internet is one of those areas of commerce that must be marked off as a national preserve to protect users from inconsistent legislation that, taken to its most extreme, could paralyze development of the Internet altogether." (*Id.* at p. 169.)

*Pataki* has not been well received in California.  We are not aware of any California court to endorse the reasoning in *Pataki*, and at least three cases have rejected

12

it.  (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 194-197; *People v. Hsu*, *supra*, 82 Cal.App.4th at pp. 984-985; *People v. Garelick*, *supra*, 161 Cal.App.4th at p. 1121.)  The three cases rejecting *Pataki* were in the context of a challenge to section 288.2, which prohibits sending certain sexual materials to a known minor with the intent to engage in various sexual acts.  The discussion in those cases applies equally to section 288.3.  These cases have generally rejected the premise that such statutes would be interpreted to operate outside of California.  They have weighed the relative interests and burdens differently, finding California's interest to be compelling and the burden on interstate commerce to be light.  And they have been unmoved by *Pataki*'s warning of the Internet's imminent demise should such statutes be enforced.  We agree with their rejection of *Pataki*.

The present case differs from the prior cases rejecting *Pataki* in that those cases all involved facial challenges to the statute at issue, whereas in this case, because the communication between defendant and Jane Doe actually involved an interstate communication, defendant may make an as-applied challenge.

We reject such a challenge for essentially the same reasons.  Even if we were to consider section 288.3 only to the extent it is applied to individuals in defendant's position, where an interstate communication is involved, there simply is no tangible burden on interstate commerce, and California still has a strong interest in punishing those who attempt to exploit minors.  Accordingly, section 288.3 does not run afoul of the commerce clause.

*Jane Doe Was a Minor for Purposes of California Law*

Defendant's next two arguments are that his conviction violated his right to privacy and his right to free speech. They both share a common essential premise: that Jane Doe was not a minor because the age of consent under Indiana law is 16 years of age. Defendant's argument is, essentially, that two adults have the right to converse about sex.

We reject the premise that Jane Doe was an adult. Jane Doe was 16 and 17 years old when defendant was engaged in cybersex with her. For purposes of applying California law, a minor is anyone under 18 years of age. (Fam. Code, § 6500; *People v. Yuksel* (2012) 207 Cal.App.4th 850, 853.) For purposes of applying *Indiana* law, a minor may include only those under 16. (See Ind. Code § 35-42-4-9 (2014).) But we are not applying Indiana law. Defendant contends it is incorrect to assume "that California's definition of a minor leaps effortlessly across state borders, imposes itself worldwide, and redefines Jane Doe, residing in Indiana, as a minor incapable of making decisions concerning sexual matters although she is legally capable of marking such decisions under the laws of her state of residence — Indiana." But California law is not "redefining" Jane Doe. It is punishing *defendant's* act of communicating with a person *California* has defined as a minor. There is considerable diversity among the states regarding when a person comes of age,[3] and no state, for purposes of interpreting its *own* law, is required to adopt another state's definition. If, for example, Jane Doe were to vacation in California at age 16, she would be subject to our laws concerning minors, notwithstanding that she is considered an adult under Indiana law. That does not mean she is somehow personally "redefined" as soon as she crosses state borders; it is simply

_____

[3] To take but a few examples, Alabama's age of consent is 16 years old. (Ala. Code § 13A-6-70 (2014).) Colorado's age of consent is 17 years old. (Colo. Rev. Stat. § 18-3-402(1)(e) (2013).) Delaware's age of consent is 16 years old if the defendant is under 30 years old; otherwise it is 18 years old. (Del. Code Ann. tit. 11, § 770 (2014).)

14

that California law regards a 16 year old differently than Indiana law. In that respect, it is fundamentally unlike marriage, which is an *act* of a state entitled to full faith and credit. (See U.S. Const., art. IV, § 1 ["Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State"].) Here, we apply California law, and under California law, Jane Doe was a minor.[4] Because defendant's arguments concerning his right to privacy and free speech are premised on Jane Doe being an adult, we need not address them further.

*Defendant Was Not Entitled to Present a Mistake of Law Defense*

Defendant's final argument is that he was denied due process because the court precluded him from offering his defense that Jane Doe was not a minor under Indiana law. Defendant tries to walk a fine line in articulating this argument, as he acknowledges that he cannot assert a mistake of law defense, and does not contend the facts warrant a mistake of fact defense. Defendant claims the defense he wanted to assert was "somewhat conceptually related to those ideas but is neither of them." He describes it as follows: "The matter presented by the defense, and tendered by the defense as being a legitimate defense to the charge, had to do with appellant's knowledge or belief about Jane Doe's *status* under the law. Was she a minor? Defense counsel noted that his client had a *reasonable belief that Jane Doe was an adult* (i.e. not a minor as required by the penal statute) because that is exactly what she was under the laws of the State of Indiana." In our view, this is simply a mistake of law defense. Defendant knew Jane Doe was under 18 and thus a minor under California law. He believed, however, that Indiana law controlled in determining whether Jane Doe was a minor for purposes of

---

[4] Defendant cites several cases where, under the Full Faith and Credit Clause, courts were required to make difficult choice-of-law decisions, and in some cases to apply the law of another state. None of the cases are even close to being on point. Here, the crime — communication plus intent — occurred entirely in California. California law obviously applies.

15

applying section 288.3. Plainly and simply, that is a mistake of law. And it is no defense to a violation of section 288.3. (*People v. Cole* (2007) 156 Cal.App.4th 452, 483 ["Generally, mistake of law is not a defense to a crime. [Citation.] 'If the act itself is punishable when knowingly done, it is immaterial that the defendant thought it was lawful'"].)

In a slightly different variation, defendant contends, "The problem in the present case comes about because Penal Code [section 288.3, subdivision (a)] uses the term 'minor' and the challenge presented by the defense revolved around that word." But this gets back to essentially the same issue: statutory interpretation, and whether "minor" would be defined by California or Indiana law, which is an issue of law. Mistake of law was not an available defense, and thus there was no denial of due process in precluding defendant from putting it on.[5]

---

[5] We recognize that mistake of law can be a valid defense to a specific intent crime where the mistake negates the specific intent. (*People v. Howard* (1984) 36 Cal.3d 852, 862-863) That is not the case here. Section 288.3 requires that defendant knew the victim was "a minor." That is simply a requirement that he knew the victim was under the age of 18. Section 288.3 also requires the specific intent to commit the target crime. Section 289, subdivision (h), the target crime in this case, does not use the term "minor," but instead prohibits participating in sexual penetration with "a person who is under 18 years of age." Defendant's mistaken belief about the applicability of Indiana law could not negate that specific intent requirement.

16

DISPOSITION

The judgment is affirmed.

                                        IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

17