[No. A120532. First Dist., Div. One. Jan. 16, 2009.]

ROBERT EDER et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FISH AND GAME et al., Defendants and Respondents.

**COUNSEL**

Davis Wright Tremaine and James P. Walsh for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Daniel L. Siegel and Peter Southworth, Deputy Attorneys General, for Defendants and Respondents.

Opinion

**MARCHIANO, P. J.**—In this case we uphold the constitutionality of Fish and Game Code section 8279.1, subdivision (c), which is an important adjunct to the tristate California, Oregon, and Washington agreement to regulate Dungeness crab fishing.[1]

Plaintiffs Robert Eder, Bryan Randall, and Justin Yager are Oregon Dungeness crab fishermen. Defendant California Fish and Game Commission (Commission) revoked their California Dungeness crab vessel permits because they violated section 8279.1, subdivision (c) by fishing for crab in San Francisco waters and then fishing for crab in Oregon sooner than the time designated by the regulatory statute. Plaintiffs sought writ and declaratory relief, which the trial court denied.

Plaintiffs contend they are entitled to relief because section 8279.1, subdivision (c) extraterritorially regulates conduct which was lawful in Oregon, and violates the "dormant" commerce clause and privileges and immunities clause of the United States Constitution. We reject plaintiffs' contentions and uphold the constitutionality of the statute. Accordingly, we affirm.

## I. THE REGULATORY SCHEME[2]

The Pacific Coast Dungeness crab fishery is regulated by state laws in Washington, Oregon, and California.[3] These laws impose a "3-S" system: commercial Dungeness crab fishing is restricted by sex (male only), size (over 6.25 inches), and season (usually opening Dec. 1).

A tristate memorandum of understanding (MOU) commits the Washington Department of Fish and Wildlife, the Oregon Department of Fish and Wildlife, and defendant California Department of Fish and Game to take mutually supportive actions to implement sound management of the Dungeness crab resource. The three states' regulations governing the crab fishery are

[1] Subsequent statutory references are to the Fish and Game Code.

[2] Our description of the regulatory scheme is primarily taken from a March 2002 report by Aloysius J. Didier, Jr., of the Pacific States Marine Fisheries Commission. The report was submitted to the United States Senate Committee on Commerce, Science, and Transportation, as well as the House Committee on Resources. The report, entitled "The Pacific Coast Dungeness Crab Fishery," was before the trial court and is in the record on appeal.

[3] The succulent Dungeness crab or *Cancer magister* is named after Dungeness, Washington, where the first commercial harvesting of the crab occurred. It was the first shellfish harvested commercially in the northern Pacific Coast waters.

generally consistent. There is general agreement that the regulations adequately protect the Dungeness crab resource.[4]

The fishery subject to the tristate MOU is divided into two zones: the northern zone, which runs from mid-Oregon north to the Canadian border; and the southern zone, which runs from mid-Oregon south to Point Arena, California, on the Mendocino Coast. The California portion of the southern zone is comprised of California Fish and Game Districts 6, 7, 8, and 9. (§§ 11014–11017.) In its written decisions to revoke plaintiffs' Dungeness crab vessel permits, defendant Commission refers to the California portion of the southern zone, which is essentially the northern coastal area of California, as "North Coast." We will use that designation.

South of the North Coast lies a separate Dungeness crab fishery, Fish and Game District 10, which is referred to in the record and by the parties as "Central Coast." Central Coast stretches from the southern boundary of Mendocino County to San Mateo County (§ 11018), and thus includes San Francisco. It is undisputed that Central Coast is not included in the tristate MOU and is regulated entirely by California.

Central Coast opens on November 15, approximately two weeks earlier than the tristate MOU fishery zones, to accommodate the Thanksgiving market for Dungeness crab in the San Francisco Bay Area.[5]

The record shows that historically there has been a potential problem of an early season "race" for crabs that can result in glutted markets, fishing in unsafe conditions, and the overwhelming of crab processors leading to waste of harvested crab.[6] This is apparently the reason why the crab seasons of the northern zone and the southern zone (including North Coast) are coordinated to begin simultaneously on December 1.

■ The December 1 opening in either zone can be delayed if conditions are not appropriate for crab harvest. If the opening is delayed in one zone and not the other, fishermen who take crab from the open zone must not take crab from the delayed zone until 30 days after the delay is lifted and the closed zone opens.

---

[4] This general agreement is noted in Dewees et al., *Racing for crabs . . . Costs and management options evaluated in Dungeness crab fishery* (Oct.–Dec. 2004, No. 4) 58 California Agriculture 186. This article was also before the trial court and is in the record on appeal.

[5] Cracked Dungeness crab "is as much a tradition at some Bay Area Thanksgiving tables as turkey." (Harlow, *Dungeness Crab: Pride of the West Coast Fleet* <http://www.sallysplace.com/food/columns/harlow/dungeness_crab.htm> [as of Jan. 16, 2009].)

[6] In its statement of decision, the trial court found that "The 'race for crabs' makes the Dungeness crab fishery increasingly dangerous and unprofitable. . . . Tens of thousands of pounds of crabs were wasted in recent years. . . ."

This 30-day rule is enforced in California by section 8279.1. In addition to imposing the 30-day rule on the North Coast fishery, the statute also imposes the rule on Central Coast, with the apparent purpose of discouraging an influx of boats taking advantage of the earlier, November opening of crab season.[7]

Section 8279.1, subdivision (a) provides: "No person shall take, possess onboard, or land Dungeness crab for commercial purposes from any vessel in ocean waters in [North Coast] for 30 days after the opening of the Dungeness crab fishing season in California, if both of the following events have occurred:

"(1) The opening of the season has been delayed pursuant to state law in California.

"(2) The person has taken, possessed onboard, or landed Dungeness crab for commercial purposes, from ocean waters outside of [North Coast], prior to the opening of the season in [North Coast]."

If the crab season in North Coast is delayed, no one may fish for crab in North Coast for 30 days after the season opens if they have previously fished for crab for commercial purposes from ocean waters outside of North Coast—which would include Central Coast, which opens two weeks earlier.

Section 8279.1, subdivision (b) provides: "No person shall take, possess onboard, or land Dungeness crab for commercial purposes from any vessel in ocean waters south of the border between Oregon and California for 30 days after the opening of the Dungeness crab fishing season in California, if both of the following events have occurred:

"(1) The opening of the season has been delayed pursuant to state law in California.

"(2) The person has taken, possessed onboard, or landed Dungeness crab for commercial purposes in Oregon or Washington prior to the opening of the season in California."

If the crab season in California is delayed, no one may fish for crab in ocean waters south of the Oregon border—which would presumably include Central Coast as well as North Coast—for 30 days after the season opens if they have previously fished for crab for commercial purposes in Oregon or Washington.

---

[7] The record suggests that the earlier November 15 opening leaves Central Coast open to so-called "double dipping," meaning that boats from other areas could come to Central Coast and fish when their home area seasons were still closed, then return and fish when they opened—often leaving the home Central Coast crab fishermen with little left to catch.

As defendants observe, these two subdivisions "address the scenarios of delayed seasons in California and prior fishing in California, Oregon, or Washington."

Section 8279.1, subdivision (c), which plaintiffs challenge in this case, addresses delayed seasons in Washington and Oregon and prior fishing in California. It provides: "No person shall take, possess onboard, or land Dungeness crab for commercial purposes from any vessel in ocean waters north of the border between Oregon and California for 30 days after the opening of the Dungeness crab fishing season in Oregon or Washington, if both of the following events have occurred:

"(1) The opening of the season has been delayed in Oregon or Washington.

"(2) The person has taken, possessed onboard, or landed Dungeness crab for commercial purposes in California prior to the opening of the season in ocean waters off Oregon or Washington."

In other words, if the crab season in Oregon or Washington is delayed, no one may fish for crab in Oregon or Washington for 30 days after the season opens if they have previously fished for crab for commercial purposes in California—as plaintiffs did here.

Section 8279.1 is not a criminal statute. Subdivision (e) of section 8279.1 provides: "A violation of this section shall not constitute a misdemeanor. Pursuant to Section 7857, the commission shall revoke the Dungeness crab vessel permit held by any person who violates this section."[8]

## II.   FACTS

The facts are not in dispute. The parties stipulated to the operative facts during the proceedings below.

Plaintiffs are residents of Oregon. Plaintiff Eder holds a California Dungeness crab vessel permit for the F/V *Michele Ann*. Plaintiff Randall holds a California Dungeness crab vessel permit for the F/V *Eddie & Rod*, which plaintiff Yager co-owns.[9]

This case involves the 2005–2006 Dungeness crab season. The Dungeness crab fishery in Central Coast opened on November 15, 2005. The Dungeness

---

[8] Subdivisions (d) and (f) of section 8279.1 are not pertinent to this appeal.

[9] A California Dungeness crab vessel permit is not the same as a commercial fishing license. It specifically permits its holder to fish for Dungeness crab, and is usually issued to a qualified holder of a commercial fishing license. (§ 8280.1.)

crab fishery in North Coast, as well as the fisheries in Oregon and Washington, delayed in opening until December 31, 2005.

On December 9, 2005, the Director of California's Department of Fish and Game issued a notification and order of delay which expressly noted that section 8279.1 "prohibits anyone who landed crab from ocean waters outside of [North Coast], from participating in the crab fishery in [North Coast], or any other delayed opening area, until 12:01 a.m. on January 30, 2006." The notification also expressly noted that the Oregon and Washington crab fisheries were also delayed in opening until December 31, 2005.

California's Department of Fish and Game landing receipts show that plaintiff Eder landed Dungeness crab from the *Michele Ann* in San Francisco on November 29, December 2, December 6, December 10, December 15, and December 17, 2005. The California department's landing receipts show that plaintiff Yager, fishing with plaintiff Randall's Dungeness crab vessel permit, landed Dungeness crab from the *Eddie & Rod* in San Francisco on November 28, December 1, December 5, December 11, December 15, and December 17, 2005.

Oregon Department of Fish and Wildlife landing receipts show that plaintiff Eder landed Dungeness crab from the *Michele Ann* in Newport, Oregon, on January 12, January 16, and January 28, 2006. The Oregon department's landing receipts show that plaintiff Yager landed Dungeness crab from the *Eddie & Rod* in Newport, Oregon, on January 8, January 9, January 14, January 17, and January 29, 2006.

It is undisputed that plaintiffs' January 2006 crab fishing in Oregon violated section 8279.1, subdivision (c) because plaintiffs fished for crab in Oregon before January 30, 2006—30 days from the delayed opening of the Oregon Dungeness crab season. It is equally undisputed that plaintiffs knew that their Oregon fishing violated the California statute.

## III. PROCEDURAL BACKGROUND

On August 8, 2006, the Commission notified plaintiffs that it would convene a hearing on September 13, 2006, to consider revoking their California Dungeness crab vessel permits for alleged violations of section 8279.1, subdivision (c).[10] Plaintiffs appeared before a Commission hearing officer (Hearing Officer) on September 13, represented by counsel. After the hearing, the Hearing Officer prepared detailed proposed decisions finding

---

[10] Since we will be referring to the statute frequently, we henceforth use a simpler citation form to avoid verbal clutter caused by the constant repetition of the word "subdivision."

there was clear and convincing evidence that plaintiffs had violated the statute, and rejecting plaintiffs' arguments that the statute violated the dormant commerce and privileges and immunities clauses.

The Hearing Officer proposed that plaintiffs' Dungeness crab vessel permits be revoked.

On December 7, 2006, the Commission adopted the proposed decisions as its own decisions, meaning that plaintiffs' Dungeness crab vessel permits were revoked. Revocation of the California permits is the sole penalty for violating section 8279.1(c), which imposes no criminal sanction.

On December 15, 2006, plaintiffs filed a combined petition for writ of traditional or administrative mandate and complaint for declaratory and injunctive relief, naming as defendants the Commission; California's Department of Fish and Game (Department); and various officers and members of the Commission and the Department. Plaintiffs renewed their arguments that section 8279.1(c) violated the dormant commerce clause and the privileges and immunities clause.

The parties stipulated to a single hearing to resolve the merits of the entire combined action, stipulated to the facts found in the Hearing Officer's proposed decisions, and agreed the matter raised only legal issues and could be resolved on the written materials and administrative record before the trial court.

The court heard oral argument and issued a statement of decision rejecting plaintiffs' constitutional contentions.[11] The court entered judgment for defendants.

## IV.  DISCUSSION

Plaintiffs contend that section 8279.1(c) extraterritorially regulates lawful conduct in Oregon; violates the dormant commerce clause; and violates the privileges and immunities clause. The parties agree that our standard of review is de novo. We disagree with plaintiffs' contentions for the following reasons.

---

[11] In six lines of text and without citing authority, plaintiffs' opening brief complains that the trial court did not properly address their objections to its proposed statement of decision. But plaintiffs stipulated to the facts and the trial court only resolved legal issues. As such, a statement of decision was not even required. (See *Southern Cal. Gas Co. v. City of Vernon* (1995) 41 Cal.App.4th 209, 220–221 [48 Cal.Rptr.2d 661].)

*Extraterritorial Jurisdiction*

Plaintiffs argue that their January 2006 crab fishing in Oregon was lawful under Oregon law, and that section 8279.1(c) is an illegitimate attempt by California to regulate lawful extraterritorial conduct. We assume without deciding that the January 2006 fishing was legal in Oregon.[12] But we disagree that section 8279.1(c) regulates Oregon conduct, for the simple reason that the statute regulates crab fishing *in California.* It imposes a condition on crab fishing in California waters: the 30-day wait for fishing elsewhere once a delayed season opens. We note again that the statute imposes no criminal liability, but simply the revocation of a permit to fish for Dungeness crab in the State of California.

The authorities relied on by plaintiffs do not support their position. We need not discuss each case in detail. Plaintiffs place their primary reliance on *Nielsen v. Oregon* (1909) 212 U.S. 315 [53 L.Ed. 528, 29 S.Ct. 383], that struck down an Oregon criminal prosecution of conduct in Washington that was legal in that state. By an Act of Congress, the two states had concurrent jurisdiction over the Columbia River. (*Id.* at pp. 316, 319.) Oregon prohibited the use of a purse net on the Columbia River, while Washington did not. Oregon prosecuted Nielsen for fishing with a purse net within the limits of the State of Washington. (*Id.* at pp. 316, 321.) The United States Supreme Court held that Oregon lacked jurisdiction to prosecute for the lawful Washington conduct. (*Id.* at p. 321.)

This case is distinguishable for the reason set forth above—section 8279.1(c) regulates California crab fishing. In any case, the United States Supreme Court has limited *Nielsen* to its "unusual facts" and has declared that any "continuing relevance" of that case is limited to "questions of jurisdiction between two entities deriving their concurrent jurisdiction from a single source of authority." (*Heath v. Alabama* (1985) 474 U.S. 82, 91 [88 L.Ed.2d 387, 106 S.Ct. 433].)

*Dormant Commerce Clause*

Plaintiffs, noting the undisputed fact that they are nonresidents who possess federal fishing licenses, contend that section 8279.1 violates the dormant commerce clause because it discriminates against nonresidents of California who engage in interstate commerce.

---

[12] Plaintiffs submit a letter to the Commission from the Oregon Attorney General's Office, which appears to support their position. We note that in revoking plaintiffs' permits, the Commission expressly noted that it did not, and could not, determine whether plaintiffs' January fishing in Oregon violated Oregon law.

■ The commerce clause of the United States Constitution includes an affirmative grant to Congress of the power "[t]o regulate commerce . . . among the several states . . . ." (U.S. Const., art. I, § 8, cl. 3; see *Minnesota ex rel. Hatch v. Hoeven* (8th Cir. 2006) 456 F.3d 826, 831 (*Hoeven*).)

In addition to the affirmative grant of congressional power, the commerce clause has been interpreted to include a negative, or "dormant" component "that grants courts the power to invalidate state laws that discriminate against interstate commerce. [Citation.] A dormant Commerce Clause analysis asks whether the state's law discriminates against interstate commerce and whether sufficient justification exists for the burden imposed. [Citation.]" (*Hoeven, supra*, 456 F.3d at p. 831; see *Pacific Merchant Shipping Assn. v. Voss* (1995) 12 Cal.4th 503, 514–515 [48 Cal.Rptr.2d 582, 907 P.2d 430] (*Voss*) [discussing dormant commerce clause].)

If a state statute regulates evenhandedly, with only incidental effects on interstate commerce, the statute would be considered nondiscriminatory, and therefore valid under the dormant commerce clause, unless the burden on interstate commerce is excessive in relation to local benefits. (*Voss, supra*, 12 Cal.4th at pp. 516–517.)[13]

The premise of plaintiffs' argument is that section 8279.1 regulates lawful fishing in Oregon and therefore discriminates against nonresidents engaging in interstate commerce. As we have concluded, however, the statute regulates fishing in California pursuant to California Dungeness crab vessel permits. The burden on plaintiffs is outweighed by the legitimate benefit of a policy promoting the conservation of a sustainable Dungeness crab fishery in California. As we will note in the next part, and as the trial court ruled below, the statute applies equally to residents and nonresidents alike. We thus do not see a discriminatory effect on interstate commerce. Cases such as *Healy v. The Beer Institute* (1989) 491 U.S. 324 [105 L.Ed.2d 275, 109 S.Ct. 2491], and *Baldwin v. G. A. F. Seelig.* (1935) 294 U.S. 511 [79 L.Ed. 1032, 55 S.Ct. 497], that involve express regulation of prices in other states are thus inapposite here.

Plaintiffs' dormant commerce clause argument seems to have been becalmed by congressional action. In 2005, Congress enacted, and the President signed into law, House Bill No. 1268. (H.R. No. 1268, 109th Cong., 1st Sess. (2005).) Section 6036 of that law, discussed and quoted in *Hoeven, supra*, 456 F.3d at pages 831–832, included this declaration of policy: "It is the policy of Congress that it is in the public interest for each State to continue to

---

[13] See also *People ex rel. Brown v. PuriTec* (2007) 153 Cal.App.4th 1524 [64 Cal.Rptr.3d 270].

regulate the taking for any purpose of fish and wildlife within its boundaries, including by means of laws or regulations that differentiate between residents and nonresidents of such State with respect to the availability of licenses or permits for taking of particular species of fish or wildlife . . . ."

■    Congress also declared: "Silence on the part of Congress shall not be construed to impose any barrier under clause 3 of Section 8 of Article I of the Constitution (commonly referred to as the 'commerce clause') to the regulation of . . . fishing by a State . . . ."

■    We agree with the trial court that this declaration "moots" plaintiffs' dormant commerce clause claim. "The essential element of a successful dormant Commerce Clause claim is congressional inaction, so when Congress does act, the dormancy ends, thus leaving the courts obliged to follow congressional will." (*Schutz v. Thorne* (10th Cir. 2005) 415 F.3d 1128, 1138; see *Hoeven, supra*, 456 F.3d at pp. 831–832.)[14]

## Privileges and Immunities Clause

■    The privileges and immunities clause states: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." (U.S. Const., art. IV, § 2.) As plaintiffs correctly observe, the privileges and immunities clause "bar[s] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." (*Toomer v. Witsell* (1948) 334 U.S. 385, 396 [92 L.Ed. 1460, 68 S.Ct. 1156] (*Toomer*).)

■    Plaintiffs contend that section 8279.1 violates the privileges and immunities clause because it impermissibly discriminates against nonresidents of California. But the statute does not do so. Rather, it applies indiscriminately to residents and nonresidents alike. *Anyone* who fishes commercially in certain waters under certain conditions is subject evenhandedly to the 30-day rule, without regard to their state of residence. Thus, *Toomer* and the other decision on which plaintiffs principally rely, *Brown v. Anderson* (D.Alaska 1962) 202 F.Supp. 96, are inapposite because they involved direct, express discrimination against nonresidents.[15]

---

[14] In their reply brief, plaintiffs argue section 6036 of House Bill No. 1268 (109th Cong., 1st Sess. (2005)) does not apply because section 8279.1 regulates fishing in Oregon. As we have consistently stated, the statute regulates fishing in California, and thus falls under a states' regulation of "the taking . . . of fish . . . within its boundaries."

[15] See generally 7 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, sections 610–611, pages 1000–1001.

*Conclusion*

■ In sum, section 8279.1 does not amount to extraterritorial regulation of legal Oregon conduct, and does not violate the dormant commerce clause or the privileges and immunities clause.

## V.  DISPOSITION

The judgment is affirmed.

Margulies, J., and Flinn, J.,[*] concurred.

On February 4, 2009, the opinion was modified to read as printed above.

---

[*]Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.