Filed 1/3/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| DENNIS STURGELL,<br><br>      Petitioner and Respondent<br><br>v.<br><br>DEPARTMENT OF FISH AND WILDLIFE et al.,<br><br>      Defendants and Appellants. | A154448<br><br>(San Francisco County<br>Super. Ct. No. CPF-14-514036)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |


**BY THE COURT:**

Appellants' petition for rehearing is denied and the opinion filed herein on December 6, 2019, is modified as follows:

The last two sentences of the paragraph commencing on page 12 and continuing on to page 13, are deleted, so that paragraph reads as follows:

> It is perhaps enough to note that at oral argument counsel for appellants acknowledged that this was the only case he was aware of that dealt with a "landing" violation. Beyond that, it is difficult to imagine a repeat of what occurred here, essentially a landing that, in the Department's view, was unlawful only because Sturgell began to land his crab five and three-quarter hours earlier than he should have—most of which crab, it must be noted, was not from California. As confirmed at oral argument, had Sturgell slowed down his speed into Astoria, or sailed around for six more hours, or had a leisurely dinner at 9:00 p.m. on January 29, all would have been fine.

This modification does not effect a change in the judgment.

The petition for rehearing is denied.


Date: _____                    _____ P. J.

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Stephen M. Murphy |
| Attorney for Petitioner and Respondent Dennis Sturgell: | Williams Kastner & Gibbs, PLLC, John G. Young, Theresa H. Rava; Law Office of Michael Linscheid, Michael Linscheid |
| Attorney for Respondents and Appellants California Department of Fish and Wildlife; et al.: | Attorney General of California, Xavier Becerra, Robert W. Byrne, Myung Park, Annadel A. Almendras, Barbara C. Spiegel, Jonathan Wiener, Connie P. Sung. |

Filed 12/6/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DENNIS STURGELL,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEPARTMENT OF FISH AND<br>WILDLIFE et al.,<br><br>        Defendants and Appellants. | A154448<br><br>(San Francisco County<br>Super. Ct. No. CPF-14-514036) |

Respondent Dennis Sturgell's permit to engage in commercial Dungeness crab fishing was revoked by the California Fish and Game Commission (Commission) after an administrative hearing. The trial court granted Sturgell's petition for a writ of administrative mandamus and ordered the permit reinstated. The Commission and the California Department of Fish and Wildlife (Department) appeal, arguing that the trial court erred in granting the writ because the administrative hearing officer correctly interpreted the governing statute. We conclude that the appeal is moot, and dismiss it, but do so with instructions—agreed to by both sides—that the trial court vacate its decision.

**The Regulatory Scheme**

The Pacific Coast Dungeness crab fishery is regulated by state laws in California, Oregon, and Washington, regulations that restrict commercial crab fishing by sex, size, and season. (*Eder v. Department of Fish & Game* (2009) 170 Cal.App.4th 216, 219 (*Eder*).) A tristate agreement commits the three states to mutually support sound management of the Dungeness crab resource, and the three states' regulations for the crab industry are generally consistent. (*Id.* at pp. 219–220.)

1

Crab fishing is restricted to a specified season, the opening date for which varies between the different areas into which the fishery is divided. (Fish & G. Code,[1] § 8276; *Eder, supra,* 170 Cal.App.4th at pp. 220–221.) The opening date for a given area may be delayed if quality testing indicates the crabs are of inadequate quality. (§ 8276.2.) And a vessel may not "take or land crab" in a district during any such closure. (§ 8276.3, subd. (a).)

The first month of the Dungeness crab season is the most productive, after which the catch rate decreases quickly. "[H]istorically there has been a potential problem of an early season 'race' for crabs that can result in glutted markets, fishing in unsafe conditions, and the overwhelming of crab processors leading to waste of harvested crab." (*Eder, supra,* 170 Cal.App.4th at p. 220.) In order to ensure that smaller fishing boats in local communities maintain the benefit of resources adjacent to their shorelines, California, Oregon, and Washington all have "fair start" laws that regulate the ability of fishers to move from one area to another in years when the areas have differing opening dates. (§ 8279.1; Or. Admin. R. 635-005-0465(3); Wn. Admin. Code, § 220-52-045(2).) *Eder*, which upheld the constitutionality of California's fair start statute, described it as an "important adjunct" to the tristate agreement. (*Eder, supra,* 170 Cal.App.4th at p. 219.)

Under section 8279.1, if a delay is ordered in a given area, fishers who have taken, possessed onboard, or landed Dungeness crab for commercial purposes from ocean waters outside the delayed area prior to the delayed opening may not "take, possess onboard, or land Dungeness crab for commercial purposes" in the delayed area for 30 days after the delayed opening. (§ 8279.1; *Eder, supra,* 170 Cal.App.4th at pp. 220–221.) At the time of Sturgell's alleged violation, as relevant here section 8279.1, former subdivision (c), provided, "A person shall not take, possess onboard, or land Dungeness crab for commercial purposes from any vessel in ocean waters north of the border

---

[1] Further statutory references will be to the Fish and Game Code except as otherwise specified.

2

between Oregon and California for 30 days after the opening of the Dungeness crab fishing season in Oregon or Washington, if both of the following events have occurred: [¶] (1) The opening of the season has been delayed in Oregon or Washington. [¶] (2) The person has taken, possessed onboard, or landed Dungeness crab for commercial purposes in California prior to the opening of the season in ocean waters off Oregon or Washington." (Stats. 2011, ch. 335, § 5.)[2] Unlike many other violations of the Fish and Game Code and regulations under it, a violation of section 8279.1 does not constitute a misdemeanor, but does result in mandatory revocation of the Dungeness crab vessel permit. (§ 8279.1, subd. (c).)[3]

The Legislature requires each vessel participating in the Dungeness crab fishery to have a Dungeness crab vessel permit in order to protect the fishery, by limiting the number of vessels participating in it. (§ 8280, subd. (b).) And the permitting system for commercial crab fishing is based upon legislative findings and declarations that: "the Dungeness crab fishery is important to the state because it provides a valuable food product, employment for those persons engaged in the fishery, and economic benefits to the coastal communities of the state" (§ 8280, subd. (a)); "in order to protect the

_____

[2] Other provisions of the statute imposed the same restriction on taking, possessing, or landing Dungeness crab in specified other areas when the season opening has been delayed by one who has taken, possessed, or landed such crab outside the specified waters prior to their opening. (Former § 8279.1, subds. (a), (b), (d).)

The statute has since been amended and currently provides: "(a) A person shall not take, possess onboard, or land Dungeness crab for commercial purposes from a vessel in ocean waters for 30 days after the opening of those waters for the commercial Dungeness crab fishing season, if both of the following events have occurred:

"(1) The opening of the season has been delayed in those waters.

"(2) The same vessel was used to take, possess onboard, or land Dungeness crab for commercial purposes, from ocean waters outside of the delayed waters, before the opening of the delayed waters for the season."

[3] The administrative law judge noted that the Washington and Oregon fair start laws do not have an analogous mandatory revocation provision.

3

Dungeness crab fishery, it is necessary to limit the number of vessels participating in that fishery to take Dungeness crab and it may be necessary to limit the quantity and capacity of the fishing gear used on each vessel to take Dungeness crab" (§8280, subd. (b)); and "to limit the number of vessels in the Dungeness crab fishery, it is necessary to require that the owner of each vessel participating in the fishery obtain and possess a permit for that vessel . . . ." (§ 8280, subd. (c).) Each permit is allotted a specified number of crab traps based on the history of California landings receipts for that permit between November 15, 2003 and July 15, 2008. And the 55 permits with the highest landings are allotted the maximum of 500 traps, with successively lower allocations in six additional tiers. (§ 8276.5, subd. (a)(1).)[4]

**The Facts**

Sturgell was a commercial fisher for some 48 years, having fished for crab in Washington and Oregon for 40 years or more, and in California for at least 15 years. He held Dungeness crab permits in Washington and Oregon, as well as California, and in all three qualified for the maximum tier allotment of 500 pots based on the amount of crab he had caught over the years. His boat is the *Fierce Leader*.

During the 2012–2013 Dungeness crab season, specifically between November 18, 2012 and January 9, 2013, Sturgell landed a total of 203,045 pounds of Dungeness crab in California. Oregon had delayed the opening of its season until December 2012, so Sturgell's taking of crab in California before the delayed opening of the Oregon crab fishery meant he was required to wait 30 days—until 12:01 a.m. on January 30, 2013— before taking, possessing, or landing that crab in Oregon. (§ 8279.1, subd. (a).) He was free to take Dungeness crab in northern Washington as of January 24, 2013, however, as the season had been delayed in that area due to treaty obligations to native tribes rather

---

[4] California no longer issues new Dungeness crab vessel permits, which "may be issued only pursuant to a renewal or transfer of an existing permit as provided in Section 8280.2 or 8280.3." (§ 8280.1, subd. (b).)

4

than crab quality. And Sturgell did so—not incidentally, after his attorney obtained approval from a Department attorney.

On January 29, 2013, between 4:00 and 5:00 p.m., Sturgell arrived in Astoria, Oregon, near his home port, to offload the crabs he had taken in Washington. He began to offload crabs at 6:15 p.m., and between then and 11:15 p.m. offloaded 38,295 pounds; the balance of the 64,694 total offload was completed by 4:00 a.m. on January 30. A "Shellfish & Bait Receiving Ticket," indicating the "date of landing" as January 29, 2013, was signed by Sturgell and the buyer who received the crab. And, the buyer stated in a declaration, the ticket was dated January 29, 2013 because this was the date the *Fierce Leader* arrived at the dock, and that this was "in error" as the ticket was actually written "between 4[:00] a.m. and 5[:00] a.m. on January 30, 2013, after the offload was completed." Further, according to the buyer, "[t]he landing occurred when Mr. Sturgell and I signed Shellfish & Bait ticket No: 4649418 between 4[:00 and] 5[:00] a.m. on January 30, 2013." Pursuant to section 8043, a landing receipt "shall be completed at the time of the receipt, purchase, or transfer of fish, whichever occurs first." The administrative law judge found, consistent with testimony at the administrative hearing,[5] that a landing receipt is signed "once the fish are offloaded."

**The Proceedings Below**

On February 28, 2014, the Department filed an accusation with the Commission claiming Sturgell violated section 8279 in two ways: (1) illegally harvesting crab in Washington; and (2) illegally landing crab in Oregon. The first charge was dismissed. Hearings on the second charge, for illegal landing, were held on July 14 and August 5. Robert Farrell, the assistant chief for the Department, testified on behalf of it and the Commission (collectively, appellants). Sturgell testified on his own behalf, and also

---

[5] The Department's assistant chief would describe a "landing receipt" as a "legal document" required by several code sections that is signed by the fisher and a licensed weigh master "once the fish are offloaded," and that "outlines several criteria that the Department . . . needs to manage fisheries," including the name of the fisher, the species, and pounds offloaded.

presented a Washington state based attorney specializing in the seafood industry and west coast fisheries.

Sturgell testified that he would sell to "whoever pays the highest price," and would travel to a more distant port for this purpose as long as he would not lose too much fishing time. Over the years, he had fished in an open area and then delivered in a closed area. And to him, "landing is when you sign your fish ticket." Sturgell was not cited by the Oregon Department of Fish and Wildlife for the delivery on January 29 and 30. Asked the value of his crab vessel permit, Sturgell testified he had not been able to find one being sold with a 500-pot allotment for a boat as large as his; the closest he had seen was for a boat 12 feet smaller than his, and based on the per foot value derived from the $350,000 that seller was asking, he estimated his permit would be worth a minimum of $420,000. Farrell testified that at the time of the 2014 hearing, a transferrable Dungeness crab vessel permit was worth $70,000 to $200,000, depending on the size of the vessel.

After the hearing, the administrative law judge issued a proposed decision revoking Sturgell's Dungeness crab vessel permit. And the Commission adopted the proposed decision on December 3, 2014.

On December 15, Sturgell filed a petition for administrative mandamus (Code Civ. Proc., § 1094.5), arguing that his landing of crab occurred on January 30, 2013, after the "stand down" period had ended; that section 8279.1 was not intended to prohibit the landing of legally harvested crab; and that revocation of his permit violated the constitutional prohibition against excessive fines and punishment. The trial court granted Sturgell's request for a stay of the Commission's order.[6] Ultimately, the trial court granted the petition, vacating the Commission's decision and ordering Sturgell's permit reinstated. Viewing the term "land" in section 8279.1 as ambiguous in that it is subject to several interpretations, strictly construing the statute because a violation results in

---

[6] Pursuant to appellants' unopposed request for judicial notice filed June 10, 2019, we take judicial notice of the trial court's order (Evid. Code, § 452, subd. (d)), as well as the additional documents submitted with the request. (*Id.*, § 452, subds. (d) & (h).)

6

mandatory forfeiture of a property right (the vessel permit), and noting that the legislative history does not indicate concern with landing crab that was taken legally, the court held that the statute "must be read to prohibit landing crab only that were taken from ocean waters illegally" and " 'landing' occur[ed] . . . when a delivery receipt [was] issued." Sturgell's permit was reinstated pursuant to the order.

Appellants filed a notice of appeal on March 19, 2018. Appellants did not perfect a stay of the trial court's judgment pending appeal (Code Civ. Proc., § 917.2), nor did they request a writ of supersedeas to stay proceedings in the trial court to preserve the status quo. (*Id*., § 923; Cal. Rules of Court, rule 8.112.)

On March 30, via counsel, Sturgell submitted to the Department a "Permit Transfer Application," informing the Department that in September 2017, he had sold the *Fierce Leader* to Timothy Haataia and an application to change ownership of the *Fierce Leader* accordingly. Shortly thereafter, counsel wrote the Department again, seeking to transfer the Dungeness Crab Vessel permit from the *Fierce Leader* to the *Optimus*.[7] And as the appellants' own brief puts it, "as required by the statute, both transfers were processed by the Department"—and the change in ownership and transfer of the permit thus approved.

---

[7] Appellants, by pointing to Sturgell's financial interest in Optimus Fisheries, LLC and assignment of a portion of that interest to Haataia, implicitly question the propriety of Sturgell's sale of the permit, or at least suggest he continues to have some interest in the permit. And, they argue, Sturgell's "claimed reasons" for the sale and description of Optimus Fisheries, LLC as an "innocent third party" are "entirely unsupported" and "irrelevant" to this court's jurisdiction to review the Commission's decision. In his reply to appellants' opposition to his motion, Sturgell asserted—an assertion confirmed at oral argument, and not rebutted by appellants—that the "state permit-transfer-system requires the transferor to have a temporary ownership interest in the transferee vessel as a condition precedent to the transfer" and that Sturgell relinquished his stock in Optimus Fisheries "immediately once the transfer was complete."

**The Appeal is Moot and Must Be Dismissed**

In January 2019, Sturgell filed a motion to dismiss the appeal on the basis it was moot. His fundamental argument was that, having retired from commercial fishing and sold the permit, he has no continuing interest in the permit, and his sale to an innocent third party means there is no remaining controversy—and thus no relief this court can grant.

Appellants filed opposition, and by order of February 27, we indicated we would address the motion at the time the appeal was argued. (See *Gogerty v. Coachella Valley Junior College Dist.* (1962) 57 Cal.2d 727, 729.) Argument was held, and we now grant the motion and dismiss the appeal.

An appeal is moot when there is no actual controversy upon which a judgment could operate. (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132.) " 'The pivotal question in determining if a case is moot . . . is whether the court can grant . . . any effectual relief.' " (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 96; see *Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [judicial ruling "can have no practical impact or provide the parties effectual relief"].)

Our colleagues in Division Four confirmed the applicable principles in *In re David B.* (2017) 12 Cal.App.5th 633, 644 (*David B.*): "In general, it is a court's duty to decide ' " 'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) '[T]he critical factor in considering whether [an] appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error. ' (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.)"

The sale of *Fierce Leader* and the transfer of the permit here—a sale and transfer, as noted, approved by the Department—renders the appeal moot, as shown by several cases involving the sale of the property, there real property, involved. Thus:

8

*First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798, where the trial court entered an order for sale of a home, pursuant to which a judgment creditor enforced a judgment against a judgment debtor. The debtor sought to have the property deeded back to him. The trial court rejected the claim, and the debtor appealed. The Court of Appeal dismissed the appeal, holding that it could not order the relief the debtor sought because the appeal was moot. The debtor did not post an undertaking as required by Code of Civil Procedure section 917.4, and the property was sold pursuant to the trial court's order. Consequently, the court could not fashion any order that would have the effect of reversing the trial court's order of sale or otherwise preventing the sale of the property.

*County of Los Angeles v. Butcher* (1957) 155 Cal.App.2d 744, where the county sued to enjoin defendants from selling real property alleged to have been subdivided without filing a subdivision map (as required by state law and local ordinance), and into lots whose average width was two and a half feet short of what the ordinance required. The county was denied relief and appealed. The defendants sold the properties, then moved to dismiss the appeal as moot. The court agreed, holding that reversal of the judgment would not undo the sales, and thus "would be an idle act." *(Id.* at p. 747.)

*Goldman v. County of Santa Barbara* (1962) 203 Cal.App.2d 454, where Goldman sought mandamus to prevent the enforcement of a zoning ordinance against his property. The trial court sustained demurrers without leave to amend. Petitioner appealed and then sold the property. The Court of Appeal dismissed the appeal as moot because of the sale.

*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 681–682, holding an appeal from the appointment of a receiver moot because owner's failure to post bond and the subsequent sale of property.

Appellants argue that "the appeal is not moot, because the permit can still be revoked," urging that a decision by this court to uphold the administrative revocation of the permit would render the permit itself invalid, preventing the current holder from using or selling it. According to appellants, the right to participate in the fishery and conditions on that right are attached to the permit itself, not a given permit holder, and a decision

9

that the permit can no longer be used cannot be avoided by transferring the permit to another holder just as a sale of real property cannot clear a cloud on its title. Appellants also assert that the Department's approvals of the permit transfer were ministerial, and it had no power to block the transfer since the trial court granted Sturgell's request to stay the Commission's order.

Taking up the contentions in reverse order, appellants cite no authority for their statement that the Department "generally has no power to block the transfer" if the conditions of section 8280.3 are met.

As to appellants' primary argument, we note that the wording of the provision concerning revocation has changed since Sturgell's permit was administratively revoked. That is, under the then-effective statute, section 8279.1, subdivision (e) directed, "the commission shall revoke the Dungeness crab vessel permit held by any person who violates this section." (Stats. 2011, ch. 335, § 5.) The statute was subsequently amended to provide, "the commission shall revoke the Dungeness crab vessel permit that was issued for use on the vessel that was used in violation of this section." (Stats. 2016, ch. 542, § 5.) And a similar change in wording was made in the substantive provisions of the statute: The 2011 version prohibited a person from taking, possessing onboard or landing crab in the specified area if "the person has taken, possessed onboard or landed" crab elsewhere prior to the delayed opening of the specified area; the 2016 amendment changed the condition to "the same vessel was used to take, possess onboard or land" crab outside the delayed area. (Stats. 2011, ch. 335, § 5; Stats. 2016, ch. 542, § 5.)

The parties do not discuss this change in wording of the statute, but it certainly casts doubt on appellants' argument that a violation goes with the permit, not the individual.

Appellants make the policy argument that a permit holder whose permit has been administratively revoked should not be able to escape the consequences of the revocation

10

by selling the permit.[8]  But appellants do not address how invalidating a permit that has been transferred to a third party vindicates the interests served by revocation, since the current owner of the vessel to which the permit is attached was not responsible for the violation that led to revocation.  Nor do they address how the matter would be resolved vis-a-vis the current permit holder if we were to uphold the Commission's revocation order.  Finally, we note the new owner of the *Fierce Leader* and its accompanying permit was not made a party by the Department—which, for all we know, did not even notify him of the charges or the appeal.  (See *Fazzi v. Peters* (1968) 68 Cal.2d 590, 594 [a judgment cannot be given in favor of or against one who is not a party to the action]; *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 717.)

We end discussion of this issue with the observation that the Department knowingly permitted—indeed, approved—the transfer of the permit.  So, whether viewed under principles of estoppel, or invited error, or perhaps under the maxims of jurisprudence,[9] we are troubled that a Department that has approved the transfer of the

---

[8]  The validity of appellants' concern as a general principle is perhaps supported by the Legislature's adoption—subsequent to the events in the present case—of an amendment to section 7857 providing, "An application to transfer any permit or other entitlement to take fish for commercial purposes shall be deferred if the current holder of the permit or other entitlement is awaiting final resolution of any pending criminal, civil, or administrative action that could affect the status of the permit or other entitlement." (Stats. 2018, ch. 189, § 2, eff. Jan. 1, 2019.)  The author's statement included, "commercial fishermen and party boats have been able to continue operating even while under investigation and enforcement action against them for poaching, due to instances where individuals have simply transferred the fishing permit over to another person in their business."  (Cal. Bill Analysis, Assem. Comm. on Water, Parks, & Wildlife, Assem. Bill No. 2369 (2017–2018 Reg. Sess.) as amended April 13, 2018.)

Of course, this change of law only demonstrates that appellants' position here was not the law before.

[9]  Perhaps Civil Code section 3515, "He who consents to an act is not wronged by it"; and/or Civil Code section 3516, "Acquiescence in error takes away the right of objecting to it"; and/or Civil Code section 3522, "One who grants a thing is presumed to grant also whatever is essential to its use."

11

permit can turn around and prevent the transferee from using a permit for which he has paid over $500,000.

Appellants contend we should exercise our discretion to review the appeal under the so-called public interest exception to the mootness doctrine, which essentially says that appellate courts have discretion to decide a case that, although moot, poses an issue of broad public interest that is likely to recur. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1086 [" 'continuing public importance' "]; *Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485–1486.)

Suffice to say that the decision is one in our discretion, a discretion we decline to exercise here. Beyond that, appellants have not demonstrated that such exception pertains.

While the reasons for this exception to the mootness rule have been set forth in various ways, it is discussed "with varying degrees of emphasis on the importance of the issue presented and the likelihood that it will recur." (*David B.*, *supra*, 12 Cal.App.5th at p. 653.) "Despite the nuanced variation in these articulations of when an appellate court may proceed to decide an otherwise moot appeal, the common thread running through the cases is that doing so is appropriate only if a ruling on the merits will affect future proceedings between the parties or will have some precedential consequence in future litigation generally." (*Id.* at p. 654.) That is not the situation here.

It is perhaps enough to note that at oral argument counsel for appellants acknowledged that this was the only case he was aware of that dealt with a "landing" violation. Beyond that, it is difficult to imagine a repeat of what occurred here, essentially a landing that, in the Department's view, was unlawful only because Sturgell began to land his crab five and three-quarter hours earlier than he should have—most of which crab, it must be noted, was not from California. As confirmed at oral argument, had Sturgell slowed down his speed into Astoria, or sailed around for six more hours, or had a leisurely dinner at 9:00 p.m. on January 29, all would have been fine. In other words, even assuming arguendo appellants' position that Sturgell violated the law—a violation, as noted, rejected by the trial court—that violation could only be called a

technical one or, perhaps even more accurately, innocent. And on top of it all, as also confirmed at oral argument, Sturgell gained no benefit from the five and three-quarter hours early start, as it would be days, perhaps weeks, before he could sell the crab.

Appellants' brief arguments to the contrary are unpersuasive. Appellants assert that the Department "regularly fields inquiries from the industry" about section 8279.1 and that its published answers to "Frequently Asked Questions" include one of the specific questions presented by this case. Our review of the material referred to reveals no question addressing the issue.

At oral argument, counsel for appellants asserted that there might be a situation involving a landing one to two days into the waiting period. That, of course, is not the situation here, not to mention that such a landing would clearly violate the law.

In sum, this was a one-off situation, an outlier, and it does not support the exception, not where the issues presented are essentially factual, requiring resolution on a case-by-case basis, and are unlikely to recur. (See *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 867; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215.)

## DISPOSITION

The appeal is dismissed, and the matter remanded to the trial court with instructions to dismiss its decision, instructions requested by appellants and stipulated to by Sturgell.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Miller, J.


*Sturgell v. Department of Fish & Wildlife et al.* (A154448)

14

Trial Court:                                          San Francisco County Superior Court

Trial Judge:                                          Honorable Stephen M. Murphy

Attorney for Plaintiff and Respondent                 Williams Kastner & Gibbs, PLLC, John
Dennis Sturgell:                                      G. Young, Theresa H. Rava;
                                                      Law Office of Michael Linscheid, Michael
                                                      Linscheid

Attorney for Defendants and Appellants                Attorney General of California, Robert W.
Department of Fish and Wildlife; et al.:              Byrne, Annadel A. Almendras, Barbara C.
                                                      Spiegel, Jonathan Wiener, Connie P.
                                                      Sung.